**WO**                                                                                        BL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert L. Jennings, | ) | No. CV 05-1365-PHX-JAT (JRI) |
| Plaintiff, | ) ) | **ORDER** |
| | ) | |
| vs. | ) ) | |
| | ) | |
| CO II, Huizar, et al., | ) ) | |
| Defendants. | ) ) | |

Plaintiff Robert Jennings filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that Correctional Officer Huizar retaliated against Plaintiff, thereby violating his constitutional rights (Doc. #1).[1]  Defendant moved for summary judgment on the grounds that (1) Plaintiff failed to exhaust his administrative remedies and (2) Defendant did not retaliate against Plaintiff (Doc. #39).  To the extent that Defendant argues that Plaintiff failed to exhaust his administrative remedies, the Court will construe the Motion for Summary Judgment as a Motion to Dismiss, grant it in part, and deny it in part.  The Court will then grant summary judgment as to the remaining claim and dismiss Plaintiff's action.

**I. Background**

Plaintiff alleged that he found some white inmates removing sprinklers in his assigned area for the purpose of killing squirrels "for their pleasure" (Doc. #58).  When Plaintiff

---

[1] The remaining Defendant and Counts were dismissed pursuant to 42 U.S.C. § 1997e(e) (Doc. #6).

1   inquired about the removal of the sprinklers, the inmates informed Plaintiff that they had

2   authorization from Defendant (id.).  Plaintiff approached Defendant, who informed Plaintiff

3   that it was not Plaintiff's business and for Plaintiff "to remove his sprinkler heads any time

4   one of the white inmates asked him to do so" (id.).  On three separate occasions, Plaintiff

5   complained to Defendant's immediate supervisor, Lieutenant Hummer, about the situation

6   because it was against Arizona Department of Corrections (ADC) policy to place inmates in

7   a supervisory position (Doc. ##1, 58).  Plaintiff alleged that Defendant, in retaliation,

8   (1) informed the white inmates that Plaintiff was complaining about them, thereby labeling

9   Plaintiff a snitch; (2) improperly directed other correctional officials to search Plaintiff's cell

10  and confiscate items; (3) improperly changed Plaintiff's work hours; and (4) re-assigned

11  Plaintiff to a job that provided for less hours and therefore less pay (id.; Doc. #58, ex. 4).

12      Defendant moved for summary judgment on the grounds that (1) Plaintiff failed to

13  exhaust his administrative remedies; (2) Defendant did not retaliate against Plaintiff due to

14  Plaintiff exercising a protected right; and (3) Defendant was entitled to qualified immunity

15  (Doc. #39).  Plaintiff responded (Doc. #58).

16      Plaintiff was housed in the Cheyenne Unit of the Yuma facility from May 2002 until

17  August 2006 (Doc. #40, ex. 1).  While in the Yuma facility, Plaintiff worked as a sprinkler

18  installer until January 2005, when he was re-assigned as a utility worker for nine months and

19  then re-assigned to yard detail, where he remained until he was transferred (id.).  Plaintiff

20  worked up to 75 hours every two weeks installing sprinklers (id.).  However, once he was

21  re-assigned, Plaintiff did not work more than 60 hours every two weeks (id.).  Plaintiff made

22  approximately $ .45 per hour at both jobs (id.).

23      Defendant worked as the Cheyenne Yard Crew Supervisor in the Yuma facility from

24  December 8, 2003 until September 2, 2005 (Doc. #40, ex. 2 ¶ 2).  Defendant supervised an

25  inmate yard crew of approximately 45-50 inmates (id.).  Defendant was responsible for

26  maintaining order and discipline on the yard, and to encourage inmates to develop a positive

27  work ethic and learn to be responsible (id. ¶ 3).  Defendant stated that he supervised Plaintiff

28

1    (id. ¶ 4).  Plaintiff maintained that Defendant did not supervise him; the Irrigators were

2    unsupervised (Doc. #58).

3    **II. Motion to Dismiss**

4          Defendant argues that Plaintiff failed to exhaust his administrative remedies (Doc.

5    #39).  Plaintiff responded that he was prevented from fully grieving his claims because his

6    grievances were returned as unprocessed (Doc. #58).  A challenge to a § 1983 action due to

7    the failure to exhaust administrative remedies "should be treated as a matter in abatement,

8    which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary

9    judgment."  Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).  This is primarily

10   because summary judgment is granted on the merits, while a "dismissal of an action on the

11   ground of failure to exhaust administrative remedies is not."  Id. at 1119 (citations omitted).

12   Although Defendant seeks summary judgment, his motion, to the extent that he argues that

13   Plaintiff failed to exhaust his administrative remedies, is more properly considered as an

14   unenumerated Rule 12(b) motion to dismiss.   Accordingly, the Motion for Summary

15   Judgment will be construed as a Motion to Dismiss for failure to exhaust.

16         **A.  Legal Standard**

17         Pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act, a prisoner may

18   not bring a lawsuit with respect to prison conditions under 42 U.S.C. § 1983 unless all

19   available administrative remedies are exhausted.  See Roles v. Maddox, 439 F.3d 1016, 1017

20   (9th Cir.), cert denied 127 S.Ct. 232 (2006).  Exhaustion is mandated "regardless of the relief

21   offered through administrative procedures."  Booth v. Churner, 532 U.S. 731, 741 (2001).

22   It is required in all inmate suits regarding prison life.  Porter v. Nussle, 534 U.S. 516, 523

23   (2002).  To be "properly exhausted," the prisoner "must complete the administrative review

24   process in accordance with the applicable rules, including deadlines, as a precondition to

25   bringing suit in federal court."  Woodford v. Ngo, 126 S.Ct. 2378, 2384 (2006).  The purpose

26   of the exhaustion requirement is to "afford corrections officials time and opportunity to

27   address complaints internally before allowing the initiation of a federal case."  Brown v.

28   Valoff, 422 F.3d 926, 936 (9th Cir. 2005).

1    Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt,

2  315 F.3d at 1119.  In ruling on the motion, the Court "may look beyond the pleadings and

3  decide disputed issues of fact."  Id. at 1119-20.  The Court has broad discretion as to the

4  method to be used in resolving the factual dispute.  Ritza v. Int'l Longshoremen's &

5  Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).  The proper remedy when a

6  "prisoner has not exhausted nonjudicial remedies . . . is dismissal of the claim without

7  prejudice." Wyatt, 315 F.3d at 1120.

8  **B. Analysis**

9    In order to grieve staff issues, the inmate must first submit a complaint to their

10  assigned Correctional Official III.  The CO III must investigate and attempt to resolve the

11  complaint.  The inmate may challenge the CO III's determination by submitting a formal

12  Inmate Grievance to the Institution/Unit Grievance Coordinator, whose decision may in turn

13  be appealed to the Warden or Deputy Warden.  If the Warden or Deputy Warden cannot

14  resolve the grievance, the inmate may appeal that decision to the Director.  The Director's

15  response is final (Doc. #40, ex. 5 attach. A).

16  **1. Snitch Label**

17    The record is devoid of any evidence that Plaintiff filed an inmate grievance in which

18  he complained about being labeled a "snitch."  The record thus demonstrates that Plaintiff

19  failed to exhaust his administrative remedies as to his claim that Defendant retaliated against

20  him by informing other inmates that Plaintiff had complained about them to Hummer.

21  Accordingly, this claim will be dismissed without prejudice due to Plaintiff's failure to

22  exhaust.

23  **2. Dorm Search**

24    According to the evidence, Plaintiff filed an inmate grievance complaining about

25  retaliation, racial discrimination, and racism, alleging that Defendant placed some white

26  inmates over him (Doc. #58, ex. 12).  In that grievance, Plaintiff indicated that he complained

27  about the situation and Defendant retaliated against him through an improper dorm search

28  (id.).  Plaintiff did not pursue this inmate grievance past the Inmate Letter Level (id.).

- 4 -

1    Plaintiff appears to have filed a second inmate grievance regarding the seizure of
2    items during a cell search in which he requested the return of his property (Doc. #40, ex. 6,
3    attach. B; Doc. #58, ex. 6).  Plaintiff appealed the denial of his grievance to the Grievance
4    Coordinator, who denied Plaintiff's appeal (Doc. #40, ex. 6, attach. B).  Plaintiff did not
5    appeal this decision (id.).

6    Plaintiff also filed a grievance seeking the return of a seized religious book (Doc. #58,
7    ex. 12).  The grievance did not reference a retaliation allegation (id.).  Plaintiff's grievance
8    was returned unprocessed (id.).

9    Plaintiff filed several inmate grievances regarding the seizure of personal and religious
10   items.  However, Plaintiff failed to fully exhaust these grievances as he did not file any
11   grievance appeals.  Plaintiff's argument that he was not allowed to fully grieve because his
12   grievances were returned as unprocessed is without merit.  Even assuming that Plaintiff's
13   grievances were improperly returned as unprocessed, the unprocessed grievances did not
14   allude to any claim that his items were improperly seized during a search conducted in
15   retaliation of his reporting Defendant to Hummer.  Accordingly, Plaintiff did not even
16   attempt to "afford corrections officials time and opportunity to address [Plaintiff's claim of
17   retaliation by an improper cell search and improper seizure of personal items] internally."
18   See Brown, 422 F.3d at 936.  Thus, this claim will be dismissed without prejudice due to
19   Plaintiff's failure to exhaust.

20   **3. Work Hours**

21   Plaintiff filed a grievance complaining about the change in his "turn out time," or
22   work hours, alleging that the change was made in retaliation (Doc. #58, ex. 10).  Plaintiff's
23   grievance was addressed to Hummer and referenced Plaintiff's complaint regarding
24   Defendant's action (id.).  Plaintiff did not pursue his inmate grievances past the Inmate Letter
25   Level (id.).  Plaintiff thus failed to fully exhaust his claim that his "turn out time" was
26   changed in retaliation and this claim will therefore be dismissed without prejudice.

27

28

1

### 4. Job re-assignment

2    Plaintiff filed an inmate grievance complaining about a change in job status (Doc. #40,

3 ex 6, attach. B).  Plaintiff alleged that he was assigned to another job based on a requirement

4 that inmates rotate jobs every two years (id.).  However, the new job resulted in him losing

5 ten hours of work per pay period (id.).  Plaintiff believed that the policy was not fairly

6 applied (id.).  Plaintiff appealed the denial of this grievance to the Director (id.).

7    Plaintiff also filed a grievance regarding the change in job and alleged that he was

8 being retaliated against by Defendant because "[Defendant] sought to place white inmates

9 over Plaintiff" (Doc. #40, ex. 6 attach. B).  The line officer addressed Plaintiff's grievance

10 on the merits, but the Grievance Coordinator denied the grievance because it contained two

11 issues, and considered it unprocessed (id.).  Plaintiff filed a second grievance complaining

12 about Defendant reducing Plaintiff's pay scale by reducing his hours, and that Defendant's

13 actions "arose out of racism and a discrimination under a retaliatory principle" (id.).

14    Defendant's argument that Plaintiff did not sufficiently grieve this claim because

15 Plaintiff did not name Defendant in the grievance appeal he filed and did not appeal the

16 grievances in which Plaintiff did name Defendant is without merit.  First, although Plaintiff

17 did not allege that he was re-assigned by Defendant in retaliation, Plaintiff did claim that he

18 was re-assigned for an improper purpose.  Plaintiff is not required to specifically identify

19 potential defendants or theories of recovery in his inmate grievance.  Jones v. Bock, 127

20 S.Ct. 910, 922-23 (2007).  Plaintiff's grievance sufficiently "afford[ed] corrections officials

21 time and opportunity to address [his claim of retaliatory job re-assignment] internally." See

22 Brown, 422 F.3d at 936.  Second, Plaintiff did seek to allege that Defendant re-assigned him

23 in retaliation.  However, that grievance was returned as unprocessed and Plaintiff has

24 sufficiently demonstrated that he was not provided sufficient information and support in

25 which to re-file that grievance.  According, Plaintiff was not allowed to completely grieve

26 that issue.  Thus, Plaintiff sufficiently exhausted his available remedies and Defendant's

27 Motion to Dismiss as to Plaintiff's claim of retaliatory job re-assignment will be denied.  The

28

1    Court will now address the merits of that claim pursuant to Defendant's Motion for Summary

2    Judgment.

3    **III.  Motion for Summary Judgment**

4            A court must grant summary judgment "if the pleadings, deposition, answers to

5    interrogatories, and admissions on file, together with the affidavits, if any, show that there

6    is no genuine issue as to any material fact and that the moving party is entitled to judgment

7    as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317,

8    322-23 (1986).   Under summary judgment practice, the moving party bears the initial

9    responsibility of presenting the basis for its motion and identifying those portions of the

10   record, together with affidavits, that it believes demonstrate the absence of a genuine issue

11   of material fact.  Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th

12   Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the

13   evidence in the light most favorable to the non-moving party.  Allen v. City of Los Angeles,

14   66 F.3d 1052, 1056 (9th Cir. 1995).  All reasonable inferences are drawn in the favor of the

15   nonmovant.  Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

16           If the moving party meets its burden with a properly supported motion, the burden

17   then shifts to the opposing party to present specific facts which show there is a genuine issue

18   for trial.  Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995);

19   see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n. 4 (1986).  If the moving party

20   presents evidence that, taken by itself, would establish the right to a directed verdict at trial,

21   the motion for summary judgment must be granted in the absence of any significant probative

22   evidence tending to support the opposing party's theory of the case.  First Nat'l Bank v.

23   Cities Serv. Co., 391 U.S. 253, 290 (1968); THI-Hawaii, Inc. v. First Commerce Fin. Corp.,

24   627 F.2d 991, 993-94 (9th Cir. 1980).   Conclusory allegations, unsupported by factual

25   material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d

26   1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise

27   provided by Rule 56, designate specific facts that show there is a genuine issue for trial.

28   Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

1       **A.  First Amendment Legal Standard**

2       "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An

3       assertion that a state actor took some adverse action against an inmate (2) because of (3) that

4       prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

5       Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

6       goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Plaintiff bears the initial

7       burden of pleading and proving the absence of a legitimate correctional goal. Bruce v. Ylst,

8       351 F.3d 1283, 1289 (9th Cir. 2003).  Legitimate penological goals include such things as

9       preserving institutional order and discipline.  Barnett v. Centoni, 31 F.3d 813, 815-16 (9th

10      Cir. 2004).

11      **B.  Analysis**

12      Defendant attested that he never placed white inmates in authority over Plaintiff, nor

13      did he talk about Plaintiff in front of other inmates (Doc. #40, ex. 2 ¶¶ 5-6).  Defendant did,

14      however, have to send Plaintiff back to his dorm because Plaintiff was found standing around

15      talking when he was supposed to be working and was not completing the tasks assigned him

16      (id. ¶ 7).  Defendant maintained that he never altered Plaintiff's pay sheets, and did not

17      reduce Plaintiff's work hours (id. ¶¶ 10-11).

18      Plaintiff's work hours were determined by his job assignment (id. ¶ 11).  When

19      Plaintiff was working as an Irrigator, he was authorized to work up to 70 hours every two

20      weeks because he was constantly on call (id. ¶ 12).  However, when Plaintiff was re-assigned

21      as a Brass Polisher, he was only authorized to work up to 60 hours every two weeks (id. ¶

22      13).  Defendant attested that he was not responsible for re-assigning Plaintiff as a Brass

23      Polisher; the only person authorized to re-assign Plaintiff was the Work Incentive Pay Plan

24      (WIPP) Coordinator, Deborah Wilbur (id. ¶¶ 14-15; ex. 4 ¶ 1).

25      Wilbur attested that ADC had a practice of rotating inmates into new positions every

26      two years (Doc. #40, ex. 4 ¶ 7).  In 2005, ADC reviewed the practice, resulting in a lull in

27      the two-year rotations (id. ¶ 8).  When the review was completed, the rotations continued,

28      with the highest priority placed on those inmates who had been in their current job

1  assignment the longest in excess of two years (id. ¶ 9).  Wilbur attested that she re-assigned

2  Plaintiff to Brass Polisher due to the needs of the yard crew, Plaintiff's job performance, and

3  because Plaintiff had been assigned as an Irrigator for longer than two years (id. ¶ 11).

4          Plaintiff, in contrast, believed that Defendant had some authority to assign Plaintiff

5  to Brass Polisher because "that's typical in a prison system" (Doc. #40, ex. 3 at 26).  Plaintiff

6  believed that Defendant had Plaintiff re-assigned because the re-assignment occurred "right

7  after [Plaintiff] complained about [Defendant] putting those white guys in charge" (id. at 33).

8  Although Plaintiff conceded that WIPP had the ultimate authority to assign inmates to certain

9  positions (id. at 26), he still argued that Defendant was responsible for his re-assignment, and

10  instituted the job change in retaliation (Doc. #58).

11          Based on the summary judgment evidence, a reasonable jury could not conclude that

12  Defendant took an adverse action.  Although Plaintiff was adversely affected by the job

13  re-assignment, the undisputed evidence before the Court conclusively demonstrates that

14  Defendant did not take that action.  Plaintiff's unsupported belief notwithstanding, the

15  summary judgment evidence demonstrates that Defendant lacked the authority to re-assign

16  Plaintiff.  Wilbur was the sole decision-maker and re-assigned Plaintiff based on ADC

17  policy.  Accordingly, because Defendant did not take an adverse action against Defendant,

18  the Motion for Summary Judgment will be granted.  Plaintiff's action will be dismissed.

19          **IT IS ORDERED:**

20          (1) Defendant's Motion for Summary Judgment (Doc. #39) will be construed as a

21  Motion to Dismiss to the extent Defendant argues that Plaintiff failed to exhaust his

22  administrative remedies.

23          (2) Defendant's Motion to Dismiss (Doc. #39) is **granted in part.**  Plaintiff's claims

24  of retaliation by (a) being labeled a snitch, (b) an improper cell search and seizure of personal

25  and religious items; and (c) an improper change of "turn out time" are **dismissed without**

26  **prejudice.**

27          (3) Defendant's Motion for Summary Judgment (Doc. #39) is **granted.**  Plaintiff's

28  claim of retaliatory job re-assignment is **dismissed with prejudice.**

1

    (4)   The Clerk of Court must enter judgment in favor of Defendant, and dismiss

2   Plaintiff's action.

3       DATED this 19th day of July, 2007.

4

5

6

7   _____

8               James A. Teilborg
           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28